# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned December 22, 2014

## SHELBY COUNTY GOVERNMENT, ET AL. V. CITY OF MEMPHIS, ET AL.

### Appeal from the Chancery Court for Shelby County
### No. CH1403223    Jim Kyle, Chancellor

---

### No. W2014-02197-COA-T10B-CV - Filed January 8, 2015

---

In this accelerated interlocutory appeal from the denial of a recusal motion, the newly-elected trial court denied a recusal motion on the basis that he continued to represent one of the parties to the litigation in unrelated matters while winding down his law practice. The opposing parties filed an accelerated interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B. Because this situation creates an appearance of impropriety, we reverse the judgment of the trial court.

### Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court is Reversed

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Ricky E. Wilkins, Memphis, Tennessee, for the appellants, Robert E. Teutsch, Frank G. Witherspoon, Martha C. Witherspoon, Larry Sawyer, Wanda Sawyer, Doyle S. Silliman, and Marilyn Williams.

Allan Jerome Wade, Memphis, Tennessee, for the appellee, City of Memphis.

## OPINION

### Background

This is an accelerated interlocutory appeal from a trial court's denial of a recusal

motion pursuant to Rule 10B of the Rules of the Tennessee Supreme Court. *See generally* Tenn. Sup. Ct. R. 10B. We consider this case only on the submissions of the parties and the attachments thereto. The parties' submissions indicate that the facts concerning the issue on appeal are largely undisputed.

On March 5, 2014, Shelby County Government ("Shelby County") filed a Petition for Declaratory Judgment in the Chancery Court of Shelby County, seeking a determination as to whether Shelby County or Respondent/Appellee City of Memphis ("the City of Memphis") was responsible for providing public services to the residents in the Southwind Annexation Area, while the related case, *Silliman, et al.,v. City of Memphis, et al.*, — S.W.3d —, 2014 WL 3016659 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. Nov. 12, 2014),[1] was on appeal. The City of Memphis filed an answer asserting that Shelby County's claims had been mooted by this Court's opinion in *Silliman*, and raising a counterclaim regarding the collection of vehicle registration fees and property tax appraisals. Shelby County and the City of Memphis later entered an agreed order allowing the City of Memphis to file an additional counterclaim against Appellants/Counter-Defendants Robert E. Teutsch, Frank G. Witherspoon, Martha C. Witherspoon, Larry Sawyer, Wanda Sawyer, Doyle S. Silliman, and Marylan Williams (collectively, "Appellants") for breach of their consent agreement to allow annexation of the Southwind Annexation Area. Although Shelby County remains a party to this lawsuit, the dispute central to this interlocutory appeal concerns only the City of Memphis and Appellants.

On August 7, 2014, Jim Kyle was elected to the Shelby County Chancery Court. Prior to taking the bench, Chancellor Kyle served as both a private attorney with the law firm Domico Kyle, PLLC ("Domico Kyle") and as an elected member of the Tennessee General Assembly. As an attorney with Domico Kyle, Chancellor Kyle represented the City of Memphis in several employment litigation matters.

On October 31, 2014, Appellants filed a Petition for a Temporary Restraining Order and Temporary Injunctive Relief seeking to maintain the *status quo* regarding the rendition of public services and the collection of vehicle registration fees pending resolution of either *Silliman* or the present litigation. On the same day, the chancellor presiding over the matter, Chancellor Oscar C. Carr, III, granted the Appellants' Petition for a Temporary Restraining

---

[1] *Silliman* involved the City of Memphis's attempted annexation of the Southwind Annexation Area. Appellants argued that a newly enacted statute prevented the City of Memphis from going forward with its planned annexation. *Silliman*, 2014 WL 3016659, at *1. The Court of Appeals held that the newly enacted statute did not prevent the City from going forward. *Id.* at *20. The Tennessee Supreme Court denied Appellants' application for permission to appeal on November 12, 2014, just a few days after the proceedings at issue in this case took place.

Order and set the matter for hearing on November 13, 2014. On November 3, 2014, however, Chancellor Carr recused himself from the case, and it was transferred to Chancellor Kyle in Part II of the Shelby County Chancery Court.

On November 3, 2014, the City of Memphis filed a motion to dissolve the Temporary Restraining Order, arguing that the order was entered despite several errors, including the trial court's lack of subject matter jurisdiction over the issue and numerous procedural defects. The City of Memphis filed a restated motion to dissolve on November 4, 2014. The City of Memphis's restated motion to dissolve the Temporary Restraining Order was set to be heard on November 4, 2014 before Chancellor Kyle.

At the outset of the November 4, 2014 hearing, Chancellor Kyle announced to the parties that as a partner with Domico Kyle, he had represented the City of Memphis in several matters, several of which were still pending. According to Appellants, Chancellor Kyle indicated that he continued to personally represent the City of Memphis in these matters.[2] After making his announcement, Chancellor Kyle allowed the parties a period of time to discuss the potential conflict and ordered the parties to return to court on November 6, 2014. When the parties returned to court, counsel for the Appellants lodged an oral motion asking Chancellor Kyle to withdraw on the basis of Chancellor Kyle's current representation of a party to the litigation. Appellants allege that both they and the City of Memphis were under the impression that Chancellor Kyle was willing to withdraw should a party lodge a recusal motion.

After a short recess, however, Chancellor Kyle denied the recusal motion. Chancellor Kyle admitted that he currently represented the City of Memphis in unrelated litigation, but explained:

> Theoretically, every judge of this judicial district who owns real property in the city, you could say, has an interest over and above anyone else in the outcome of this case. . . .
> So having thought about, and reviewed Rule 10, reviewing the cannons again, reviewed what we did and how we did it for the City [of Memphis], I'm going to overrule [the] motion and we're going to take this matter up today and we're going to get started.

---

[2] According to the Tennessee Code of Judicial Conduct, a newly-elected judge has 180 days to wrap up his or her law practice, which time period would end on January 7, 2015. *See* Tenn. R. Sup. Ct. 10, § 3.10.

Counsel for Appellants asked the trial court for leave to immediately appeal the denial of the recusal motion. Chancellor Kyle, however, denied the oral motion and stated that he would go on to consider the merits of the City of Memphis's motion to dissolve the Temporary Restraining Order. At the conclusion of the hearing, Chancellor Kyle orally granted the City of Memphis's motion to dissolve the Temporary Restraining Order. The trial court indicated, however, that it would entertain a written recusal motion from the Appellants.

Prior to the entry of an order on the City of Memphis's motion to dissolve the Temporary Restraining Order, on the evening of November 6, 2014, Appellants electronically filed a written motion for recusal. However, the motion was not supported by an affidavit under oath as required by Tennessee Supreme Court Rule 10B, discussed in detail, *infra*. Accordingly, Appellants filed an amended motion on November 7, 2014. Appellants' amended motion sought recusal of Chancellor Kyle on two bases. First, the Appellants asked for recusal due to Chancellor Kyle's continued representation of a party to the lawsuit in unrelated litigation. Second, the Appellants asserted that as a member of the General Assembly, Chancellor Kyle participated in the enactment of the legislation at issue in ***Silliman***. According to Appellants' later submission to this Court in support of their accelerated interlocutory appeal, Chancellor Kyle "made impassioned public statements in his capacity as a legislator, concerning the City of Memphis' right to extend its boundaries by ordinance, and was a vocal opponent of the law [that Appellants argued in ***Silliman*** prevented the City of Memphis from exercising their annexation power]." As such, Appellants argued that Chancellor Kyle remaining on the case created an appearance of impropriety.

On November 10, 2014, Chancellor Kyle entered an order doing two things: 1) denying the written recusal motion; and 2) setting aside the temporary restraining order. In explaining his reasoning in denying the recusal motion, Chancellor Kyle stated:

> As to the Court's "representation" of the City, said representation concerns six administrative law matters related to six City of Memphis employees which are near conclusion and are part of the liquidation and winding down of Domico Kyle PLLC. None of said matters are currently pending in the 30th Judicial District and at no time was the Court associated with plaintiff's counsel.
> As to the objection to the Court being a former member of the legislative branch of government, the Court could not function if all matters voted upon were deemed to create a conflict.
> In compliance with Tennessee Supreme Court Rule 10,

-4-

Code of Judicial Conduct Rule 2.11(D), the ground upon which the Chancellor hereby denied Movants' motion for recusal is that the Chancellor has deemed that Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rules 2.4, 2.7, 2.11 do not require him to disqualify himself in this proceeding given the total circumstances of this matter. The outcome of the *Silliman* case indirectly impacts every citizen of the 30th Judicial District as well as the citizens of other Judicial Districts in the State therefore the disqualification of this Chancellor and this Court is not well taken and does not create an appearance of conflict of interest.

Appellants filed a timely accelerated appeal to this Court of the recusal issue.

## Issue Presented

This appeal involves two questions. First, whether Chancellor Kyle's continued representation of a party to the lawsuit, or former position as a State Legislator, created an appearance of impropriety warranting recusal in this case.[3] Second, if this Court concludes

---

[3] In its submission to this Court, the City of Memphis argues that Appellants' motion was not timely because it was first raised as an oral motion and no motion fully compliant with Tennessee Supreme Court Rule 10B was filed until November 7, 2014. Rule 10B provides, in pertinent part:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed **written motion**. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this Rule.

Tenn. Sup. Ct. R. 10B, § 803 (emphasis added). Further, it is well-settled that "[t]he failure to seek recusal in a timely manner may result in the waiver of any complaint concerning the judge's impartiality." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (citing *Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)). Appellants' amended motion was filed approximately three days after Chancellor Kyle stated on the record his current professional relationship with the City of Memphis. Under these circumstances, we cannot conclude that Appellants' motion was untimely with regard to Chancellor

(...continued)

that the situation presented an appearance of impropriety warranting the recusal of Chancellor Kyle, should Chancellor Kyle's order dissolving the temporary restraining order be vacated. We conclude that Chancellor's Kyle continued representation of the City of Memphis at the institution of these proceedings created an appearance of impropriety. Accordingly, we conclude that Chancellor Kyle erred in denying Appellants' recusal motion. We further conclude, however, that Appellants' request to vacate the order dissolving the Temporary Restraining Order is moot.

## Analysis
## A. Recusal

Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn.2002)). Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App.1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that he or she can preside over a matter fairly and impartially, the judge nevertheless should recuse himself or herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565 (citation omitted).

---

(...continued)

Kyle's representation of the City of Memphis. Because we conclude that this continued representation is sufficient to warrant recusal, we need not consider Appellants' additional argument regarding Chancellor Kyle's statements made while a member of the General Assembly, including the City of Memphis's argument that this allegation was not properly raised in the trial court.

Adverse rulings and "the mere fact that a witness takes offense at the court's assessment of the witness" do not provide grounds for recusal, however, in light of the "adversarial nature of litigation." *Id.* Further, although "bias" and "prejudice" are terms that usually refer to "a state of mind or attitude that works to predispose a judge for or against a party. . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo.App.1990)). Appeals from a trial court's denial of a recusal motion are reviewed *de novo* with no presumption of correctness. *See* Tenn. Sup. Ct. R. 10B, § 2.01

In this case, the trial court ruled that neither Code of Judicial Conduct Rule 2.4,[4] 2.7,[5] nor 2.11 required his recusal. Specifically at issue in this case is Rule 2.11 of the Code of Judicial Conduct, which states, in pertinent part:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>
> (2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner

---

[4] Rule 2.4 of the Code of Judicial Conduct states:

> (A) A judge shall not be swayed by partisan interests, public clamor or fear of criticism.
>
> (B) A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment.
>
> (C) A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.

[5] Rule 2.7 0f the Code of Judicial Conduct states: "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by RJC 2.11 or other law."

of such a person is:

(a) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;

(b) acting as a lawyer in the proceeding;

(c) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or

(d) likely to be a material witness in the proceeding.

(3) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or is a party to the proceeding.

(4) The judge knows or learns by means of a timely motion that a party, a party's lawyer, or the law firm of a party's lawyer has made contributions or given such support to the judge's campaign that the judge's impartiality might reasonably be questioned.

(5) The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

(6) The judge:

(a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association;

(b) served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding, or

has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy; . . . .

Tenn. Sup. Ct. R. 10, § 2.11. Comment 1 to Rule 2.11 clarifies that "a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply." Tenn. Sup. Ct. R. 10, § 2.11, cmt. 1.

Accordingly, merely because the situation alleged to create an appearance of impropriety is not specifically mentioned in Rule 2.11, this Court may still conclude that the situation warrants recusal of the trial judge. As the Tennessee Supreme Court explained:

> A trial judge should recuse himself or herself whenever the judge has any doubt as to his or her ability to preside impartially or whenever his or her impartiality can reasonably be questioned. *Pannell v. State*, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001). This is an objective standard. *Alley* [*v. State*], 882 S.W.2d [810,] 820 [(Tenn. Crim. App. 1994).] The appearance of impropriety is conceptually distinct from the subjective approach of a judge facing a possible disqualification challenge and does not depend on the judge's belief that he or she is acting properly. *See Liteky v. United States*, 510 U.S. 540, 553, n. 2, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("The judge does not have to be subjectively biased or prejudiced, so long as he appears to be so."). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Id.*

*State v. Rimmer*, 250 S.W.3d 12, 38 (Tenn. 2008).

In this case, we conclude that there is a reasonable basis for questioning the judge's impartiality due to his current representation of the City of Memphis in other litigation. Neither Chancellor Kyle nor the City of Memphis dispute that at the time Chancellor Kyle was assigned the case and made his rulings, he was currently representing the City of Memphis in unrelated litigation. Although there is no specific rule regarding a judge's current representation of a party contained in the Code of Judicial Conduct, there is a rule

regarding conflicts created by representation of current clients in the Tennessee Rules of Professional Responsibility, applicable to all Tennessee attorneys. Rule 1.7 of the Tennessee Rules of Professional Responsibility, titled "Conflict of Interest: Current Clients" provides, in pertinent part:

> a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.[6]

Tenn. Sup. Ct. R. 8, § 1.7. Thus, the Rules of Professional Responsibility recognize the potential for conflict where a lawyer's responsibilities to a current client may affect the representation of another client due to the fiduciary duty a lawyer owes to his client. *See* Tenn. Sup. Ct. R. 8, § 1.7, cmt. 12 ("The relationship between lawyer and client is a fiduciary

---

[6]There can be no dispute that Appellants have not consented to Chancellor Kyle's decision to continue to preside over this case.

one in which the lawyer occupies the highest position of trust and confidence."); *see also* ***Rose v. Welch***, 115 S.W.3d 478, 486 n.4 (Tenn. Ct. App. 2003) (recognizing an attorney's fiduciary duty to a client). This Court has held that a fiduciary duty is "a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person[.]" ***Commissioners of Powell-Clinch Utility Dist. v. Utility Management Review Bd.***, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013) (quoting *Black's Law Dictionary* 545 (8th ed. 2004)). Accordingly, Chancellor Kyle owed a duty to act in the best interests of the City of Memphis with regard to his current representation of them at the time he presided over these proceedings.

Further, where Rule 1.7 requires a direct conflict or at least a substantial risk, the Code of Judicial Conduct merely requires that the situation at issue create an appearance of impropriety. *See* Tenn. Sup. Ct. R. 10, § 2.11; ***Bean***, 280 S.W.3d at 807. As such, it appears that judges must be held to an even higher standard in this situation. Indeed, the Code of Judicial Conduct supports our conclusion, as it provides a definite time line for when newly elected judges must wind up their law practices and definitively states that "[a] judge shall not practice law." Tenn. Sup. Ct. R. 10, § 3.10. The Tennessee Court of Criminal Appeals has held that this requirement is "unambiguous and absolute." ***State v. Lipford***, 67 S.W.3d 79, 83 (Tenn. Crim. App. 2001). In the criminal context, the Court of Criminal Appeals has concluded that allowing a sitting judge to continue to represent a party in a matter after the expiration of the 180-day winding up period "would be inherently prejudicial to the judicial process." ***Id.*** at 84.

We, likewise, conclude that Chancellor Kyle's decision to continue to preside over this case in spite of his continuing fiduciary duty to the City of Memphis was in error. Due to his current representation of the City of Memphis in unrelated litigation, Chancellor Kyle continued to owe a fiduciary duty to the City of Memphis. Further, we disagree that Chancellor Kyle has no greater interest in this litigation than any other citizen of the 30th Judicial District. Here, Chancellor Kyle has a continuing business and fiduciary relationship with the City of Memphis that goes far beyond the relationship of ordinary citizen to city. Although we do not suggest that Chancellor Kyle is unable to put his professional relationship with the City of Memphis aside in order to fulfill his role as impartial judge, under these circumstances, "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." ***Bean***, 280 S.W.3d at 805. To allow a judge to preside over a case where he is currently representing one of the parties in other litigation "would be inherently prejudicial to the judicial process." ***Lipford***, 67 S.W.3d at 84. Because the trial judge's continued representation of the City of Memphis requires his recusal, we need not consider Appellants' additional argument concerning Chancellor Kyle's statements made while a member of the General Assembly. Accordingly, the judgment of the trial court is reversed.

## B. Order Dissolving the Temporary Injunction

Finally, we address Appellants' argument that because we have concluded that Chancellor Kyle erred in presiding over this case in light of his current representation of the City of Memphis, we should vacate the trial court's decision to dissolve the Temporary Restraining Order. Temporary restraining orders are governed by Rule 65.03 of the Tennessee Rules of Civil Procedure. Rule 65.03 states, in relevant part:

> (1) **When Authorized.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and
>
> (B) the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.
>
> \*   \*   \*
>
> (5) **Binding Effect and Duration**. A restraining order becomes effective and binding on the party to be restrained at the time of service or when the party is informed of the order, whichever is earlier. *Every temporary restraining order granted without notice shall expire by its terms within such time after entry, not to exceed fifteen days, as the Court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period, or unless the party against whom the order is directed consents that it may be extended for a longer period.* The reasons for the extension shall be entered of record.

(Bold in original) (Italics added for emphasis). Thus, Rule 65.03 states that any temporary restraining order granted without notice to the opposing party shall dissolve by operation of law at a time not to exceed fifteen days, unless extended for good cause shown.

The Temporary Restraining Order at issue in this case was granted on October 31, 2014. Accordingly, it has long since dissolved pursuant to Rule 65.03 regardless of any

-12-

action by Chancellor Kyle. Consequently, even if this Court were to vacate Chancellor Kyle's order dissolving the Temporary Restraining Order, the Temporary Restraining Order would nevertheless have been dissolved by operation of Rule 65.03. Thus, Appellants' argument is moot. *See* 1A C.J.S. Actions § 76 (2014) (noting that mootness "requires that opinions not be given concerning issues which are no longer in existence because of changes in factual circumstances").

Furthermore, from our reading of Appellants' request for the Temporary Restraining Order, Appellants asserted that the order was required because the ***Silliman*** case was awaiting action on the Appellants' application for permission to appeal. According to Appellants, a restraining order was needed until a mandate was issued in that case, as the Tennessee Supreme Court could very well conclude that the enactment of the subject statute prevented the City of Memphis from annexing the Southwind Annexation Area. The Tennessee Supreme Court, however, denied Appellants' application for permission to appeal on November 12, 2014, leaving in place the Court of Appeals' ruling that the newly enacted legislation did not prevent the City of Memphis from going forward with the planned annexation. A mandate was issued on the same day and a petition to rehear was denied on November 24, 2014. Accordingly, it appears that Appellants' stated basis for the Temporary Restraining Order no longer exists. Under these circumstances, we decline to reinstate the Temporary Restraining Order. Our decision, however, does not prevent Appellants from seeking another Temporary Restraining Order in the trial court, should one be warranted.

**Conclusion**

The judgment of the trial court denying Appellants' recusal motion is reversed. Appellants' argument concerning the Temporary Restraining Order is moot. This cause is remanded to the trial court for transfer to a different chancellor for all further proceedings. Costs of this appeal are taxed to Appellee, the City of Memphis, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE